DISTRICT OF OREGON
**F I L E D**
April 18, 2014
**Clerk, U.S. Bankruptcy Court**

Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 13-35969-rld13 |
| Cristobal Antonio Pineda-Pineda and | ) |
| Maria Elena Pineda, | ) Memorandum Opinion Sustaining |
| | ) Washington County's Objection |
| Debtors. | ) to Confirmation |

Cristobal Antonio Pineda-Pineda and Maria Elena Pineda filed their chapter 13[1] case on September 20, 2013 ("Petition Date"). The Pinedas filed their Initial Chapter 13 Plan ("Proposed Plan") on October 7, 2013. As relevant to the matter before me, the Proposed Plan included Washington County (the "County") as the holder of a secured claim against the Pinedas' residence property (the "Property"). The County's claim was based on unpaid real property taxes estimated to be in the amount of $25,350. The Pinedas proposed to pay the County's secured claim with 16%

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Page 1 - Memorandum Sustaining Washington County's Objection to Confirmation

interest during the life of the Proposed Plan at the rate of $150 per month for the first twenty months, and thereafter all available funds after their attorney's fees had been paid.[2] The duration of the Proposed Plan was 36 months. Paragraph 12 of the Proposed Plan provided that the Pinedas would sell or refinance the Property by November 30, 2016; the Pinedas projected that such sale or refinance would result in net proceeds sufficient to pay the County's secured claim in full and to complete the Proposed Plan.

On December 2, 2013, the County objected ("Objection") to the Proposed Plan on the basis that it had obtained a judgment and decree foreclosing its tax lien on or about October 14, 2011. In light of the foreclosure, the only remaining interest (other than bare legal title and possession) the Pinedas held in the Property on the Petition Date was a statutory redemption right which expired on October 14, 2013.

I held a hearing ("Hearing") on the Objection on March 26, 2014, following which I denied confirmation of the Proposed Plan. This Memorandum Opinion sets forth my findings of fact and conclusions of law, made pursuant to Civil Rule 52(a), applicable in this contested matter pursuant to Rules 7052 and 9014, in support of my oral decision sustaining the Objection.

I have core jurisdiction to hear and determine this contested matter

---

[2] The total monthly plan payment amount was to be $300, and the Pinedas' attorney was owed $2,450 at the time the Proposed Plan was filed. If month 21 arrived and the attorney's fees had not been paid in full by that time, no funds would be available for continued monthly payments to the County until the attorney's fees were paid.

pursuant to 28 U.S.C. § 157(b)(2)(L).

The issue before me is two-fold: what is the nature of the Pinedas' interest in the Property, and what impact does the bankruptcy case have on that interest. In deciding this matter, I start with the precept that "[p]roperty rights are created and defined by state law." Butner v. United States, 440 U.S. 48, 55 (1979).

The Property was Subject to the Rights of the County to Assess and Collect Ad Valorem Taxes.

The Property was subject to assessment and taxation by the County pursuant to ORS 307.030. Once assessed, real property taxes become a lien on the Property. ORS 311.405(1).

The County is mandated to mail tax statements to property owners not later than October 25th of each tax year. The property tax is due beginning November 15th, but may be paid in three installments which are due on November 15th, February 15th, and May 15th, respectively. ORS 311.505(1). Real property taxes become delinquent on May 16th if not paid in full. ORS 311.510.

The real property taxes which are the subject of this contested matter are as follows:

| Tax Year | Unpaid Tax[3] | Delinquency Date |
|---|---|---|
| 2007 | $2,334.69 | May 16, 2008 |
| 2008 | $2,397.56 | May 16, 2009 |
| 2009 | $2,503.69 | May 16, 2010 |
| 2010 | $2,538.18 | May 16, 2011 |

---

[3] The amount listed includes only the assessed amount of the tax for the year. It does not include interest and other charges, if any, imposed with respect to the delinquent taxes.

Page 3 - Memorandum Sustaining Washington County's Objection to Confirmation

ORS 312.010(1) provides: "Real property within this state is subject to foreclosure for delinquent taxes whenever three years have elapsed from the earliest date of delinquency of taxes levied and charged thereon." In this case, the Property was subject to foreclosure because the real property taxes for the 2007 through 2010 tax years were unpaid as of May 16, 2011. On May 17, 2011, the County issued its First Foreclosure Notice, advising the Pinedas that the Property had become subject to foreclosure because of unpaid real property taxes. Declaration of Diane Belt ("Belt Declaration"), Ex. A, p. 9.

ORS 312.030(3) instructs the County's tax collector to prepare a list ("List") of all real properties subject to foreclosure. After the List has been prepared, the property owners are served with notice of a foreclosure proceeding by publication and by certified and first class mail. ORS 312.040. As to any property on the List with respect to which the delinquent real property taxes remain unpaid, the County's tax collector is required to institute foreclosure proceedings by filing an application ("Application") for foreclosure with the Circuit Court of the County. ORS 312.050 and 312.060.

ORS 312.110 provides a process for removing a property from such foreclosure proceedings. A property owner has 30 days to file an answer to the Application, after which time the Circuit Court is required to give judgment ("Default Judgment") to the County for delinquent taxes and interest on all of the remaining properties on the List. ORS 312.090. The Default Judgment provides that each of the properties on the List "shall be sold directly to the [C]ounty for the respective amounts of

taxes and interest for which the properties severally are liable." ORS 312.100.

A Default Judgment was entered as to the Property on October 14, 2011. Declaration of Brad Anderson ("Anderson Declaration"), Ex. A. Exhibit 3 to the Default Judgment is the List. Anderson Declaration, Ex A, pp. 11-29. The Property is No. 103 on the List. Id., Ex. A, p. 10. Exhibit 2 to the Default Judgment is a list of properties ("Dismissed Properties") dismissed from the foreclosure proceeding. Anderson Declaration, Ex. A, pp. 9-10. The Property is not among the Dismissed Properties. Thus, the Default Judgment applies to the Property.

A certified copy of the Default Judgment constitutes a certificate of sale to the county as to each of the properties described in the judgment. ORS 312.100. In their responsive memorandum, the Pinedas challenged whether the Court Clerk actually delivered a certified copy of the Default Judgment to the County's tax collector. The County thereafter provided the Declaration of Lisa Argyle, an accounting assistant in the County's tax collections unit, which stated that she had received a copy of the Default Judgment "a few days after October 14, 2011." The Pinedas appear to concede at this time that the Default Judgment was itself a sale to the County.

The County was required to hold the properties sold to it as a result of the Default Judgment for a period of two years. ORS 312.100. During this period ("Redemption Period") the Pinedas were entitled to redeem the Property by paying the full amount of the Default Judgment, plus interest and statutory penalties and fees, relating to the Property.

Page 5 - Memorandum Sustaining Washington County's Objection to Confirmation

ORS 312.120. As the "former owner," the Pinedas had a statutory right to possess the Property during the Redemption Period so long as they did not commit any waste to the Property. ORS 312.180.

Finally, at least one year prior to the expiration of the Redemption Period, the County's tax collector is required to provide notice and warning of the expiration of the Redemption Period to the property owners subject to the Default Judgment by first class and certified mail. ORS 312.125. In addition, the County's tax collector is required to publish, twice within the 10-30 day window prior to the expiration of the Redemption Period, a general notice of that expiration. ORS 312.130. If property subject to the Default Judgment is not redeemed within the Redemption Period, the County's tax collector "shall" execute a deed, deeding the property to the County. ORS 312.200.

There is no dispute that the County followed each of the procedures regarding notice of the expiration of the Redemption Period as to the Property.

<u>The Pinedas' Interest in the Property on the Petition Date</u>

In the Proposed Plan, the Pinedas asserted the right to "cure" the default reflected by the Foreclosure Judgment through § 1322(b)(3). However, the limitations on the right to cure a default on residential real property have been the subject of numerous decisions. An excellent discussion of the application of § 1322 to the County's interest in the Property is found in <u>McCarn v. WYHY Fed. Credit Union (In re McCarn)</u>, 218 B.R. 154, 159-62 (10th Cir. BAP 1998). As noted in <u>McCarn</u>, § 1322(b)(2) and (5) only authorize a chapter 13 debtor to "cure" within certain

Page 6 - Memorandum Sustaining Washington County's Objection to Confirmation

constraints a claim secured only by a security interest in real property that is the debtor's principal residence. The fundamental problem the Pinedas face is found in § 1322(c), which provides:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law –
> (1) a default with respect to, or that gave rise to, a lien on debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) <u>until such residence is sold at a foreclosure sale</u> that is conducted in accordance with applicable nonbankruptcy law.

(Emphasis added.) In this case, because Oregon law provides that the issuance by the County Clerk of a certified copy of the Default Judgment constitutes a foreclosure sale of the Property to the County, § 1322(c)(1) applies to prohibit the Pinedas' from exercising any "cure" of their default in payment of their real property taxes.

### Section 108(b) and the Redemption Period

The parties do not dispute that under Oregon law, the Redemption Period was to expire on October 14, 2013, two years after the Default Judgment was entered. I am asked to consider the implication of the bankruptcy filing on the expiration of the Redemption Period.

In <u>In re Rudolph</u>, 166 B.R. 440 (D. Or. 1994), the District Court for the District of Oregon determined that § 108(b) is available to extend the Redemption Period. Section 108(b) provides:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later

Page 7 - Memorandum Sustaining Washington County's Objection to Confirmation

```
        of—
        (1) the end of such period, including any suspension of
        such period occurring on or after the commencement of
        the case; or
        (2) 60 days after the order for relief.
```

Because the Redemption Period had not expired before the Petition Date, § 108(b) operates to extend it to October 14, 2013, _i.e._, the end of the Redemption Period under Oregon law, or sixty days after the order for relief was entered in the Pinedas' bankruptcy case, whichever occurred later. The order for relief was entered on September 20, 2013. Sixty days thereafter was November 19, 2013. As the later of the two dates, November 19, 2013 was the date upon which the Redemption Period expired. Having not redeemed the Property in accordance with Oregon law by this date, the Pinendas lost their right to redeem the Property.

As of the date of the hearing, the County had not yet recorded its deed as authorized by Oregon law. Under ORS 312.200 and Ninth Circuit authority, after November 19, 2013 the county was free to record without obtaining relief from the automatic stay in light of the Pinedas' failure to redeem the Property in accordance with Oregon law. See <u>McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit)</u>, 217 F.3d 1072, 1080 (9th Cir. 2000) ("Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of [] a 'judicial' proceeding" for purposes of § 362.). The recording of a deed following the tax sale of real property has been recognized by the Ninth Circuit Bankruptcy Appellate Panel as such a ministerial act. See <u>Tracht Gut, LLC v. County of Los Angeles Treasurer and Tax Collector (In re Tracht Gut, LLC)</u>, 503 B.R.

804, 812 (9th Cir. BAP 2014).

Admittedly, Judge Radcliffe arrived at a different conclusion in Roost v. Douglas County (In re Southern Or. Mort., Inc.), 143 B.R. 569 (Bankr. D. Or. 1992), relying primarily on the second sentence of ORS 312.200. Id. at 573-74. ORS 312.200 reads in its entirety:

> The properties not redeemed within the two-year period prescribed by ORS 312.120 <u>shall be deeded to the county by the tax collector</u>. All rights of redemption with respect to the real properties therein described, shall terminate on the execution of the deed to the county. No return or confirmation of the sale or deed to the county is required or necessary.

(Emphasis added.) Judge Radcliffe's opinion in Roost was issued before the Ninth Circuit had recognized a "ministerial acts" exception to the automatic stay in its Pettit decision. Nothing in ORS 312.200 requires the tax collector to exercise discretion, deliberation or judgment before issuing a deed to the county following a tax foreclosure sale and the expiration of the two-year redemption period, in spite of the arguable ambiguity of timing in the second sentence of ORS 312.200. The issuance and recording of such a deed are no more than ministerial acts, excepted from operation of the automatic stay of § 362(a).

Confirmation of the Proposed Plan.

Section 1325(a)(1) provides:

Except as provided in subsection (b),[4] the court shall confirm a plan if–

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title.

---

[4] The provisions of § 1325(b) are not relevant to the current analysis.

Page 9 - Memorandum Sustaining Washington County's Objection to Confirmation

Stated inversely, I cannot confirm a plan that does not comply with the provisions of chapter 13 and with other applicable provisions of Title 11. Because the Proposed Plan violates § 1322(c)(1), I cannot confirm it. Accordingly, the Objection is sustained, and confirmation of the Proposed Plan is DENIED. I previously have entered an Order Denying Confirmation.